# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HORATIO WASHINGTON DEPOT TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>TOLMAR, INC., TOLMAR PHARMACEUTICALS, INC., and TOLMAR THERAPEUTICS, INC.,<br><br>Defendants. | C.A. No. 17-1086-LPS-CJB |

## MEMORANDUM ORDER

At Wilmington this **27th** day of **August, 2019**:

Having reviewed the parties' briefing and other materials (*see, e.g.*, D.I. 130, 134, 138) related to the motion for attorney fees pursuant to 35 U.S.C. § 285 filed by Defendants Tolmar Inc., Tolmar Pharmaceuticals, Inc., and Tolmar Therapeutics, Inc. (together, "Tolmar" or Defendants), **IT IS HEREBY ORDERED** that Tolmar's motion (D.I. 129) is **DENIED**.

## I.  BACKGROUND

Plaintiff Horatio Washington Depot Technologies LLC ("Horatio" or Plaintiff) sued Tolmar for infringement of U.S. Patent Nos. 5,932,547 ("the '547 patent"), 6,124,261 ("the '261 patent"), and 6,235,712 ("the '712 patent"). (D.I. 1)  The patents-in-suit describe stable non-aqueous formulations that include a peptide and a polar aprotic solvent. (*See* '547 patent,[1] Abstract)  These formulations may be used, for example, to treat prostatic cancer. ('547 patent,

---

[1] The patents share substantially identical specifications.  For simplicity, the Court cites to the '547 patent's specification.

2:29-46) The '547 and '261 patents claim formulations while the '712 patent claims methods for making formulations.

On September 27, 2017, Tolmar moved to dismiss for failure to state a claim. (D.I. 12) Tolmar argued that the entirety of the Complaint should be dismissed because Horatio had failed to allege plausible claims of direct, indirect, and willful infringement and had also not pled compliance with the marking requirements of 35 U.S.C. § 287. (D.I. 13)

On November 1, 2018, Magistrate Judge Burke issued a Report and Recommendation (D.I. 77) ("Report"), recommending that Tolmar's motion: (1) be granted with respect to the insufficiency Horatio's allegations of direct infringement and that Horatio be granted an opportunity to file an amended Complaint; (2) be denied with respect to the purported insufficiency of the allegations of Tolmar's knowledge of the patents-in-suit, which is an element of Horatio's indirect and willful infringement claims; and (3) be granted with prejudice with respect to the marking issue. Both parties filed and briefed objections to the Report. (*See* D.I. 88, 89, 96, 97)

During the pendency of the motion to dismiss and objections to the Report, the parties and the Court engaged in claim construction. On December 26, 2018, the Court issued its claim construction opinion and order. (D.I. 102, 103) Of the five sets of terms disputed by the parties, the Court agreed with Tolmar's position with respect to four – including for "leuprolide," "dissolving," and "LHRH antagonist" – and agreed with Horatio's position on one. (D.I. 102 at 4-13)

On March 15, 2019, the parties stipulated to non-infringement of claim 4 of the '547 patent and to claims 4, 8-10, and 12-15 of the '712 patent. (D.I. 119) The parties explained that non-infringement of these claims followed from the Court's construction of "LHRH antagonist"

and "leuprolide." (*Id.* ¶¶ 6, 7) The Court entered the parties' stipulation four days later. (*Id.*) Thereafter, Horatio continued to assert other claims of the '547 and '712 patents as well as the asserted claims of the '261 patent. (*Compare* D.I. 1 *with* D.I. 119)

On March 20, 2019, the Court adopted the Report and, accordingly, granted-in-part and denied-in-part Tolmar's motion to dismiss. (D.I. 120) In particular, the Court dismissed all then-asserted claims of infringement pertaining to the '547 and '261 patents due to the unavailability of damages for such infringement. (D.I. 120) The Court agreed with Judge Burke and Tolmar that: (1) Horatio could not obtain pre-suit damages, since a prior owner of these patents had failed to comply with the marking statute; and (2) Horatio could not obtain post-suit damages, because these patents expired before the Complaint was filed. (*See* D.I. 13 at 17-20; D.I. 77 at 3-20; D.I. 120 at 1-5) The Court denied the motion to dismiss with respect to purported pleading deficiencies and overruled Tolmar's objections to limited portions of the Report. (*See* D.I. 120 at 5-6)

After the Court's ruling, the case could proceed only on the '712 patent. On April 2, 2019, Horatio filed a First Amended Complaint ("FAC"). (D.I. 122) The FAC asserted infringement of only claims 1, 2, and 16 from the '712 patent; it dropped all other claims of the '712 patent as well as all claims of the '547 and '261 patents. (*Id.*)

"On May 23, 2019, Horatio indicated its intent to stipulate to non-infringement of the [asserted claims of the '712 patent], based on the Court's construction of the term 'dissolving.'" (D.I. 130 at 10) (citing D.I. 131-1 Ex. 16) On May 31, 2019, the parties stipulated to non-infringement of the remaining asserted claims (claims 1, 2, and 16 of the '712 patent). (D.I. 127) The stipulation explained that non-infringement of the remaining asserted claims followed from

3

the Court's construction of "dissolving." (*Id.* ¶ 9) The Court entered the stipulation on June 4. (D.I. 128)

Tolmar filed its motion for attorney fees on June 17, 2019. (D.I. 129) Horatio filed a notice of appeal on July 3, 2019. (D.I. 136) The parties completed briefing on Tolmar's motion on July 8, 2019. (*See* D.I. 134, 138)

## II. LEGAL STANDARDS

In "exceptional" patent cases, a Court may award "reasonable attorney fees" to the "prevailing party." 35 U.S.C. § 285. Federal Circuit law applies when interpreting and applying § 285. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006). The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Ultimately, the Court must make a discretionary decision based on the totality of circumstances. *See id.* A party moving for attorney fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Id.* at 1758.

## III. DISCUSSION

Tolmar is the prevailing party because the Court entered final judgement of non-infringement.[2] (D.I. 128 ¶ 11) Therefore, the issue presented here is whether this case is exceptional. The Court concludes that it is not.

---

[2] Horatio suggests that "Tolmar's position as the prevailing party in this case is less than certain, given the multiple, substantive issues that remain to be finally resolved." (D.I. 134 at 9) Horatio is referring to the possibility of reversal on appeal. However, at this point, Tolmar is the "prevailing" because it has obtained final judgment in its favor on all claims. *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018).

4

Tolmar's contention that this case has been exceptional from its inception, and Horatio should have known not to file it, is unpersuasive. (*See* D.I. 130 at 1 ("Horatio should not have asserted at least two of the three Asserted Patents in the first instance."); *see also id.* at 13-14) Tolmar contends that if Horatio had conducted an adequate pre-suit investigation, Horatio would have learned that a previous owner of the patents-in-suit (ALZA Corporation) had failed to comply with the marking statute with respect to its product (Viadur) practicing the patents. (*See* D.I. 130 at 14-15) But Horatio advanced three non-frivolous arguments that the marking statute's requirements were either met or inapplicable here, namely that:

> (1) Viadur's Orange Book listing including the asserted patents complies with marking requirement; (2) Horatio, as a party that has never marketed any product practicing the asserted patents was not subject to the marking statute; and (3) the lack of a product available to mark during damages window moots the marking statute's requirements.

(D.I. 134 at 4-5) Although the Court ultimately rejected Horatio's arguments, they were not unreasonable[3] and, by all indications, were made in good faith. Therefore, Horatio's position on the marking issue was not so weak as to warrant a finding of exceptionality. *See Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1313 (Fed. Cir. 2016).

Tolmar next contends that this case is exceptional because Horatio proposed unreasonable claim constructions, particularly for the claim terms "LHRH antagonist," "dissolving," and "stable non-aqueous formulation." (*See* D.I. 130 at 15-19) To Tolmar, Horatio's constructions "could not reasonably be supported by fact or law" and, under any

---

[3] In particular, Horatio's argument that Viadur's Orange Book listing provided Tolmar (which, as another pharmaceutical manufacturer, would be very familiar with the Orange Book) with either actual or constructive notice of the '547 and '261 patents is one that has not been conclusively rejected by the Federal Circuit. (*See* D.I. 77 at 11) (Report noting that only case on point is 2006 decision from Southern District of New York)

reasonable constructions (including Tolmar's proposals, which were essentially adopted by the Court), it was clear that Tolmar's product did not practice these limitations. (*Id.* at 16) Again the Court disagrees. As with most claim construction disputes, the ones presented here included arguments from both sides that were within a broad range of reasonableness.[4] Tolmar has failed to persuade the Court that Horatio should have known it could not have realistically expected to prevail on its claim construction positions.

Tolmar did largely prevail on the claim construction disputes, so it additionally argues that Horatio should have recognized, quickly, that its infringement claims were doomed to fail at least after reviewing the Court's claim construction decision. Here Tolmar is on stronger ground.[5] Still, however, the Court is not persuaded that this case became exceptional during the five months between its claim construction order – which was issued on December 26, 2018

---

[4] Nor has Tolmar shown that "Horatio's shifting positions [and] new arguments at the last minute support a finding of exceptional case" (D.I. 130 at 18) or cause this case to stand out from others.

[5] For example, it appears that a reasonable litigant in Horatio's position would know, as Horatio knew, that the accused product, Tolmar's Eligard®, is an "injectable suspension." (D.I. 1 ¶ 25; D.I. 1-5 Ex. E) Any reasonable litigant would have read the Court's claim construction opinion as rejecting Horatio's theory that a suspension is a "stable non-aqueous formulation" as that term is used in the claims. (*See, e.g.*, D.I. 102 at 5 ("Horatio fails to identify any evidence that supports its reading of the claimed formulations to include depots, suspensions, or dispersions."); *id.* at 6 ("[W]hile 'formulation' is sometimes used in the patents to refer to depots and suspensions, the patents only characterize the inventive 'stable non-aqueous formulation' as a solution."); *id.* at 9-10 ("[T]he suspensions described by the patents as formulations are prior art, not the claimed invention."))

Further, the Court rejected Horatio's construction of "stable non-aqueous formulation," which would have covered depots, suspensions, dispersions, and solutions, and instead adopted Tolmar's construction, which requires a "stable non-aqueous formulation" to be a solution. (*See* D.I. 102 at 5-7) Since all asserted claims require a "stable non-aqueous formulation," and any reasonable litigant in Horatio's position would have known that the accused product is a suspension and not a solution, the Court's construction foreclosed any reasonable theory of infringement of the '547, '261, and '712 patents.

(D.I. 103) – and the parties' submission of the last of their proposed stipulations of non-infringement – which was filed on May 31, 2019 (D.I. 127).

It is undisputed that Horatio reached out to Tolmar and offered to stipulate to non-infringement of certain claims of the '547 and '712 patents in January 2019, within approximately one month after the Court resolved the parties' claim construction disputes. (*See* D.I. 134 at 2; D.I. 138 at 4) There was nothing untimely in Horatio's actions with respect to these claims.

With respect to the remaining asserted claims from the '712 patent, the timing of Horatio's offer to stipulate to non-infringement is far less laudable. Despite having the Court's construction of "dissolving" since December 2018, it took five full months for Horatio to be willing to stipulate to non-infringement of these claims. During those five months, the parties engaged in extensive discovery (including ten depositions) and Tolmar was required to write an expert report. (*See* D.I. 131 ¶ 2) During that same period, Horatio also inexplicably nearly doubled its settlement demand. (*See* D.I. 131 ¶ 3)[6] As Tolmar states: "Horatio provides no explanation for why it was proper for Horatio to pursue infringement of the 'dissolving' claims during expert discovery – describing no analysis or testing that it needed to perform to understand that its claim lacked merit." (D.I. 138 at 5) There is also evidence that Horatio (and/or its CEO, Anjan Chatterji) criticized Tolmar in letters to Tolmar's banks and in a website, possibly to increase settlement pressure on Tolmar. (*See* D.I. 131-1 Ex. 17 (letter to Tolmar's bank characterizing Tolmar as having history of acting in "bad faith" and implying that, given strength of Horatio's patent infringement case, bank ran "significant risk" of not recouping loan to Tolmar); D.I. 131-1 Ex. 23 (website characterizing Tolmar as "over-collateralized," having "a

---

[6] Horatio does not dispute – or even address – this contention.

great deal of CapEx [capital expenditures] and OpEx [operating expenses]," paying high interest rate on its loans, and questioning whether Tolmar's Eligard® product had "the strength within the trademark to go against" Lupron®, a competing product))

This is troubling conduct. A reasonable case can be made that the Court should treat this case as exceptional from late January through late May 2019 at least with respect to Horatio's handling of the '712 patent.

Ultimately, however, the Court has decided that this case is not exceptional. Considering the totality of the circumstances, this case as a whole does not stand out from the many other patent cases this Court has handled. Instead, as is fairly common, it involves lengthy litigation over a multi-issue motion to dismiss, on which each side prevailed in part, and claim construction disputes, on which both sides presented repositions. Tolmar has not proven that Horatio's delay in agreeing to stipulate to non-infringement of the '712 patent was due to bad faith, as opposed to typical delays that occur in litigation (particularly given that the motion to dismiss and objections were pending until late March and the parties agreed to four stipulations to extend discovery between February and May (*see* D.I. 115, 121, 124, 126). Nor has Tolmar proven that Horatio's extrajudicial conduct (assuming it is relevant to the "exceptional case" analysis) was undertaken in bad faith. Tolmar has not asked the Court to declare the case exceptional solely from January through May 2019 and solely with respect to the '712 patent but, even if it had, the Court is not persuaded that even this limited portion of the case rises to the level of "exceptional" required to warrant an order that Horatio pay a portion of Tolmar's attorney fees.

While Tolmar makes allusion to "patent trolls" (*see, e.g.*, D.I. 130 at 19), and contends that Horatio's pre-suit investigation was wholly inadequate (*see, e.g.*, D.I. 130 at 3-4, 13-14),

8

Tolmar has completely failed to prove that Horatio is a troll. As far as the record reveals, the instant case is the only litigation Horatio has ever filed. (*See* D.I. 134 at 6) There is no evidence that Horatio engaged in prototypical trolling conduct like suing a high volume of defendants and quickly pressuring them to settle for amounts less than the anticipated costs of litigation. *See generally Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1318 (Fed. Cir. 2011) (describing typical patent troll behavior). Furthermore, the evidence demonstrates that Horatio conducted a pre-suit investigation, which included reliance on work that had been performed by the predecessor owner of the patents-in-suit and review by Horatio's attorneys. (*See* D.I. 130 at 5) (citing evidence) While Tolmar complains that it was deprived of the opportunity to take discovery that might have allowed it to challenge Horatio's showing on these points (*see* D.I. 130 at 14; D.I. 138 at 1, 8 n.5), Tolmar also never asked the Court to compel such discovery, and the Court must make its decision based on the record the parties have created. On that record, Tolmar has failed to prove that this case is exceptional.

In considering the totality of the circumstances, the Court concludes that this case does not "stand[] out from others" and is not, therefore, "exceptional" within the meaning of Section 285. *See Octane*, 572 U.S. at 554. Horatio prevailed in part on the motion to dismiss, presented non-frivolous claim construction positions (under which, if adopted, its case likely had merit), and offered to stipulate to non-infringement of many of its claims in a timely manner within approximately one month of the Court adopting Tolmar's proposed constructions. Tolmar has failed to prove by a preponderance of the evidence that Horatio did not engage in an adequate pre-suit investigation. While Horatio appears not to have moved with an ideal amount of dispatch in offering to stipulate to non-infringement of the '712 patent – waiting approximately five months after its claim construction position was rejected – and while there are hints of

9

potentially troubling conduct in the record (i.e., Horatio nearly doubling its settlement demand after largely losing on claim construction, extrajudicial statements by Horatio's CEO to Tolmar's banks, and the establishment of a website critical of Tolmar), Tolmar has failed to prove by a preponderance of the evidence that Horatio was acting in bad faith.

Accordingly, **IT IS HEREBY ORDERED** that Tolmar's motion (D.I. 129) is **DENIED.**

August 27, 2019  
Wilmington, Delaware

_____  
HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT COURT